RECEIVED
USDC, WESTERN DISTRICT OF LA
TONY R. MOORE, CLERK
DATE 3/15/12

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| **LARRY BAZILE** | **CIVIL ACTION NO. 10-0050** |
| -vs- | **JUDGE DRELL** |
| **CHEVRON U.S.A. INC., et al.** | **MAGISTRATE JUDGE KIRK** |

### RULING

Before the Court is the Motion for Summary Judgment filed by Chevron U.S.A. Inc. ("Chevron"). (Document No. 29.) Plaintiff has opposed the motion, and the Court finds no need for oral argument. For the reasons set forth herein, the motion will be GRANTED IN PART AND DENIED IN PART.

### Factual Background

Plaintiff, Larry Bazile, initially filed a "Seaman's Complaint Without Prepayment of Costs" on January 12, 2010, in which he alleged he sustained injury on October 5, 2009 when he was working as a galley hand in the employ of Eurest Support Services ("ESS") onboard the "Eugene Island 360," an oil platform owned by Chevron. (Document No. 1.) The initial Complaint was completely supplanted by Plaintiff's "First Supplemental and Amending Petition" against Chevron and ESS, filed March 11, 2011 (Document No. 25), which sets forth causes of action under the Outer Continental Shelf Lands Act

("OCSLA"), 43 U.S.C. § 1331, et seq.[1]; the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 901, et seq.; and Louisiana law. Specifically, Plaintiff contended, "[o]n October 5, 2009, plaintiff was injured when descending his top bunk, a ladder provided by the defendants collapsed, causing him to fall backwards into objects in the sleeping quarters." (Document No. 25, ¶ 6.) Bazile also set forth allegations of an intentional tort against ESS only, in which he claimed ESS should have known the ladder was broken and could have caused him to fall. Id. at ¶ 10.

Subsequently, the parties voluntarily stipulated to the dismissal of Plaintiff's claims against ESS (Document No. 26), and this Court entered a Judgment to that effect on March 14, 2012. (Document No. 42.) In the Pretrial Stipulations, the parties agree Plaintiff's remaining claim in this litigation is his action against Chevron under the OCSLA, to which Louisiana's substantive personal injury law applies.[2] (Document No. 38.)

In the Pretrial Stipulations, the parties agree the alleged accident occurred at 6:15 or 6:20 A.M. on October 5, 2009 as Plaintiff was attempting to exit top bunk "number 8-25" in the housing area of the Chevron oil platform. The parties further agree the accident was unwitnessed, and that the platform could house up to twenty-five people, but only

---

[1] The parties do not contest the oil platform on which the incident allegedly occurred is a fixed platform on the outer Continental Shelf in the Gulf of Mexico off the coast of Louisiana. See Document Nos. 29-5 and 38.)

[2] "The Outer Continental Shelf Lands Act (OCSLA) mandates that when disputes arise involving fixed structures erected on the outer Continental Shelf, applicable laws of the adjacent state will be applied to the extent not inconsistent with other federal laws and regulations." Coulter v. Texaco, Inc., 117 F.3d 909, 911 (5th Cir. 1997) (internal citations omitted). See also 43 U.S.C. § 1333(a)(1) and (2).

six to seven persons were on the platform on the date of the alleged incident. Two of those people, Nathaniel Francis and Plaintiff, were employees of ESS.

In his deposition, Bazile explained the ladder to the bunk in question had some loose screws on the top. It was Bazile's understanding he was to report such a condition to his boss, Nathaniel Francis, which he did. However, the screws had remained loose for two or three months before the accident. (Exhibit 29-3, pp. 63-65.) Plaintiff also mentioned the problem with the ladder to "Joey," an employee of Chevron who worked on the platform. (Id. at pp. 34-35 and 65.)

Despite the loose screws, Plaintiff had safely traversed the ladder many times before the accident, including when he awoke around 4:00 or 4:30 A.M. on October 5 and descended the ladder to go to work. Plaintiff then returned to his bunk around 6:00 A.M. for a short nap. According to Bazile, the following activity occurred when he arose a few minutes later:

> What happened was that when - when I put my right foot down I - I missed the ladder, the step and I'm thinking my feet going to hit the step because I can't - I can't look down to see where I'm putting my feet, I'm basically feeling for it. And I missed it and when I missed it, I fell back so when I got to falling I grabbed the ladder because my hand wouldn't hold here and I grabbed the ladder, that's when the ladder ripped from the bed and I hit the locker, when I banged the lockers I hit the floor.

(Id. at pp. 74-75.)[3]

---

[3] Photographs taken on the day of the accident show the marks and screw holes on the top bunk where the ladder had been affixed and also show the wooden ladder itself. (Document No. 29-3, Exhibits 9, 11, and 13.)

3

Plaintiff then reported the incident to Nathaniel Francis, who informed a Chevron employee, and an accident report was completed. Thereafter, Plaintiff was removed from the platform by helicopter. (Id. at pp. 82-83.)

Law and Analysis

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Although Rule 56 was amended effective December 1, 2010, the amendment "contains no substantive change to the standard."[4] Seacor Holdings, Inc. v. Commonwealth Ins. Co., 635 F.3d 675, 680, n.8 (5th Cir. 2011). A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). We consider all "evidence in the light most favorable to the party resisting the motion." Trevino v. Celanese Corp., 701 F.2d 397, 407 (5th Cir. 1983).

The moving party bears the initial burden in summary judgment and must demonstrate that no genuine dispute of material fact exists. Once the moving party has successfully demonstrated the absence of a genuine dispute regarding any material fact, the burden shifts to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The non-moving party may not merely rely on the allegations and conclusions contained within the pleadings; rather, he "must go beyond the pleadings and designate specific facts in the record showing that there is a genuine

---

[4] Accordingly, we have, in some instances, substituted "dispute" in this Ruling for "issue," even as may have been referenced in the jurisprudence. The words are interchangeable and they mean the same.

issue for trial." Wallace v. Texas Tech Univ., 80 F.3d 1042, 1047 (5th Cir.1996). Furthermore, these specific facts must be shown through something more than "some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." Little v. Liquid Air. Corp., 37 F.3d 1069, 1075 (5th Cir.1994) (internal citations and quotations omitted).

La. Civil Code art. 2315 provides, "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it."

> Louisiana courts have interpreted this section to require proof of the basic elements of negligence. Namely, a plaintiff must prove: (1) defendant had a duty to conform his conduct to a specific standard; (2) defendant's conduct failed to conform to the appropriate standard; (3) defendant's substandard conduct was a cause-in-fact of the plaintiff's injuries; (4) defendant's substandard conduct was a legal cause of the plaintiff's injuries; and (5) actual damages. Perkins v. Entergy Corp., 782 So.2d 606, 611 (La. 2001).

Veals v. Nautical Adventures, LLC, 354 Fed.Appx. 843, 845, (5th Cir. 2009).

The jurisprudence provides that the owner or operator of a facility has the duty to exercise reasonable care for the safety of people on its premises and the duty not to expose such persons to unreasonable risks of injury or harm. Mundy v. Dept. of Health and Human Resources, 620 So.2d 811, 813 (La. 1993).

In this case, Chevron takes the position the alleged accident was caused solely by Plaintiff's failure to place his foot on the step of the ladder. Plaintiff counters that he would not have fallen if the loose screws in the ladder had not given way when he tried to regain his balance.

Applying the jurisprudence set forth above, and considering all the information submitted at this summary judgment stage, we find a genuine dispute of material fact

exists regarding the cause of Plaintiff's fall. It does appear Plaintiff's failure to place his foot on the proper step of the ladder played a role in the accident. However, there is also sufficient evidence to let the factfinder at trial decide whether the accident could have been prevented, or its consequences lessened, if the loose screws in the top of the ladder had held. Thus, while comparative fault does appear to be an issue, it is inappropriate at this point to absolve Chevron from all responsibility, and Chevron's Motion for Summary Judgment on liability will be denied.

Chevron next argues there is no legal basis for assessing punitive damages against it, even if it is found at fault in causing the accident. Plaintiff has offered no response to this position. Our review of the statutes and jurisprudence reveals no basis on which Plaintiff could recover punitive damages by way of Louisiana or federal law under the circumstances in this case. Therefore, Chevron's Motion for Summary Judgment on this matter will be granted.

## Conclusion

For these reasons, Chevron's Motion for Summary Judgment (Document No. 29) is GRANTED IN PART to the extent that Plaintiff's claims for punitive damages are DISMISSED WITH PREJUDICE. In all other respects, the Motion for Summary Judgment is DENIED.

SIGNED on this 15 day of March, 2012 at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE